```
1                 IN THE UNITED STATES DISTRICT COURT

2                 FOR THE MIDDLE DISTRICT OF ALABAMA

3                          EASTERN DIVISION

4


5   UNITED STATES OF AMERICA

6        vs.                        CASE NO.:  3:10cr14-WKW

7   JOSE CARRILLO,

8           Defendant.

9


10                    * * * * * * * * * *

11                    SENTENCING PROCEEDINGS

12                    * * * * * * * * * *

13

14           BEFORE THE HONORABLE W. KEITH WATKINS, UNITED STATES

    DISTRICT JUDGE, at Montgomery, Alabama, on Thursday, November 4,

15  2010, commencing at 11:46 a.m.

16  APPEARANCES:

17
    FOR THE GOVERNMENT:     Ms. Susan R. Redmond
18                          Assistant United States Attorney
                            OFFICE OF THE UNITED STATES ATTORNEY
19                          131 Clayton Street
                            Montgomery, Alabama  36104
20
    FOR THE DEFENDANT:      Ms. Susan Graham James, Attorney at Law
21                          SUSAN G. JAMES & ASSOCIATES
                            600 South McDonough Street
22                          Montgomery, Alabama  36104

23  ALSO PRESENT:           Ms. Analia Sarno-Riggle, Interpreter
    (via telephone)
24
               Proceedings reported stenographically;
25                 transcript produced by computer.
```

1      (The following proceedings were heard before the Honorable

2       W. Keith Watkins, United States District Judge, at

3       Montgomery, Alabama, on Thursday, November 4, 2010,

4       commencing at 11:46 a.m.:)

5     (The interpreter was previously duly sworn)

6     (All responses by the defendant are through the interpreter)

7          THE COURT:  What I'll do is I'll call the next case,

8   which is Jose Carrillo.  And we'll take a ten-minute break while

9   y'all get set up for that, and we'll commence that case right at

10   noon.

11          THE INTERPRETER:  Thank you, Your Honor.  So come back

12   in ten minutes, right?

13          THE CLERK:  Yes, that's correct.

14          THE INTERPRETER:  Thank you.

15     (Recess at 11:46 a.m. until 11:58 a.m.)

16          THE CLERK:  Please remain seated.  Court is in session.

17          THE COURT:  All right.  I call the case of United

18   States versus Jose Carrillo.  Let's take appearances for the

19   government first, please.

20          MS. REDMOND:  Good afternoon, Your Honor.  Susan

21   Redmond for the United States.  Seated at counsel table with me

22   is Tom Halasz, an agent with the Drug Enforcement

23   Administration.

24          THE COURT:  Is that Hallis?

25          MS. REDMOND:  H-A-L-A-S-Z.  Halasz.

1          THE COURT:   Good afternoon to both of you.

2          And for the defendant?

3          MS. JAMES:   Susan James on behalf of Mr. Carrillo.

4          THE COURT:   Good morning -- good afternoon, Ms. James.

5          Good afternoon, Mr. Carrillo.

6          THE DEFENDANT:   Good afternoon.

7          THE COURT:   All right.   I believe we have a (c)(1)(C)

8     plea agreement in this case, count one as to distribution of

9     controlled substance under 841 -- possession with intent to

10    distribute, that is, under 841(a)(1), and count two, conspiracy

11    to possess with intent to distribute a controlled substance,

12    marijuana, under Section 846.   Will the government state the

13    terms of the plea agreement, please.

14          MS. REDMOND:   Yes, Your Honor.   The parties reached a

15    plea agreement pursuant to Federal Rule of Criminal Procedure

16    11(c)(1)(C).   The provisions established by the government are

17    that upon the defendant's entering of a plea of guilty to

18    charges -- excuse me -- to counts one and two of the indictment,

19    we agree that the Court should grant the defendant a two-level

20    reduction in offense level pursuant to United States Sentencing

21    Guideline 3E1.1(a) for acceptance of responsibility.   We agreed

22    that if he continued to accept responsibility and allow us to

23    use our resources efficiently, we would move at sentencing for

24    the additional third point pursuant to United States Sentencing

25    Guideline 3E1.1(b).   We agreed that if he completed his

1  obligations contained within the cooperation agreement, which

2  was indeed a part of the plea agreement, we would move for a

3  downward departure pursuant to United States Sentencing

4  Guideline 5K1.1 and Title 18 of the United States Code, Section

5  3553(e).  We also made allowance for a Rule 35 motion after

6  sentencing if the defendant provided further cooperation not

7  contemplated by the agreement.

8          The defendant, Your Honor, agreed to plead guilty to

9  counts one and two of the indictment, to waiver of appeal and

10  collateral attack.  We also, Your Honor, made allowance within

11  the body of the plea agreement for notice to the defendant

12  regarding removal or deportation proceedings.  I believe those

13  are the salient points of the plea agreement.

14          THE COURT:  Has the defendant complied with the terms

15  of the plea agreement?

16          MS. REDMOND:  The defendant has allowed --

17          THE INTERPRETER:  Can you speak up a little bit, just a

18  little bit, please, Ms. AUSA?

19          MS. REDMOND:  Yes.  I apologize.

20          THE INTERPRETER:  Thank you.

21          MS. REDMOND:  The defendant has permitted -- by his

22  entry of a guilty plea, has allowed the United States to use its

23  resources efficiently.  We do believe that the Court should

24  grant him two levels for acceptance of responsibility.  And I

25  believe that we as well motioned for the additional third point

1   pursuant to 3E1.1(b).  There was not cooperation provided by the

2   defendant, and the government has not filed and will not be

3   filing a motion for a 5K1.1 or a motion pursuant to Title 18,

4   3553(e).  However, the Rule 35 clause contained within the plea

5   agreement does still stand.  So if the defendant decides to

6   provide cooperation after sentencing, we will at that point

7   consider filing a Rule 35 in his case.

8          THE COURT:  Ms. James, does that fairly state the --

9   first of all, the terms of the plea agreement?

10          MS. JAMES:  Yes, Your Honor.

11          THE COURT:  All right.  Now, has the government

12   complied with the plea agreement?

13          MS. JAMES:  Yes, sir.

14          THE COURT:  Okay.  The Court accepts the plea

15   agreement.  I don't have your motion for the third level.

16   Perhaps it's been filed.  Are you making it orally if you

17   haven't filed it?

18          MS. REDMOND:  If I have not filed said motion, Judge,

19   we do at this point move for the Court to grant a one-level

20   adjustment down in the defendant's offense level for his

21   acceptance of responsibility pursuant to United States

22   Sentencing Guideline 3E1.1(b).

23          THE COURT:  Motion is granted.

24          Now, Ms. James, have you and your client had an

25   opportunity to review the presentence report?

```
 1              MS. JAMES:  Yes, Your Honor.
 2              THE COURT:  Do y'all have objections remaining?
 3              MS. JAMES:  We have one, Judge.  I think we initially
 4    filed two, one based on quantity and one the firearm
 5    enhancement.  I noted in my sentencing memorandum that we were
 6    withdrawing the quantity objection.  So the only thing left for
 7    the Court to resolve is the firearm enhancement.  I am aware --
 8              THE INTERPRETER:  Excuse me.  Ms. --
 9              MS. JAMES:  Yes.
10              THE INTERPRETER:  If you could just get a little closer
11    to the microphone.  I'm really struggling to hear.
12              MS. JAMES:  Okay.
13              THE COURT:  Ms. James, if you're going to make an
14    argument, just come on up to the podium.  Your client can stay
15    at the table so he can hear the interpreter.
16              THE INTERPRETER:  Thank you, Your Honor.
17              MS. JAMES:  Can you hear me better?
18              THE INTERPRETER:  Yes.  Much better.  Thank you.
19              MS. JAMES:  Okay.  Thank you.
20              Judge, I think that one can be resolved fairly
21    quickly.  It's my understanding -- we were set for sentencing
22    with the codefendants.  And I think you've already ruled on that
23    issue as relates to the codefendants, so I'm assuming you're
24    probably going to rule that way now.  But I was just going to
25    point out -- I mean the only thing that I could add to the
```

1  objection is that the government, in the sentencing memorandum

2  that was filed in this case as related to all of the defendants

3  who were set to be sentenced on the -- on the 6th of October,

4  that -- I'm looking to see.  Ms. Redmond, in her sentencing

5  memorandum as to all the defendants stated the government would

6  also proffer to the Court that the evidence suggests that the

7  use of firearms was not contemplated by the coconspirators.  In

8  the only incident of punishment recounted as taking place within

9  the Middle District, a blunt object was used as a method of

10  discipline.  And I believe she said in the paragraph preceding

11  that that there was no evidence that any of the codefendants

12  were aware of the firearm or that firearms had ever been used or

13  possessed.  And it's been my experience it's kind of unusual for

14  the government to take an affirmative position like that as

15  relates to a firearm.  In this instance, I believe Mr. Crowell,

16  who came to the scene after the other defendants -- or

17  possible --

18          THE INTERPRETER:  Excuse me.  Who came to the scene

19  after other defendants?

20          MS. JAMES:  Mr. Crowell.  C-R-O-W-E-L-L.

21          THE INTERPRETER:  Thank you.

22          MS. JAMES:  It was Mr. Crowell that had a firearm.  I

23  believe it was a small handgun that was in his pocket.  He was a

24  resident of that area, had a business there, I believe.  And I

25  don't think that there are any facts or circumstances suggesting

1   that it was brought to that scene for any purpose related to the

2   drug activity that was going on.  And so I do think that this

3   case -- I think it's outside of the cases that the Court

4   typically relies on from the Eleventh Circuit to impose a

5   firearm enhancement.

6          THE COURT:  All right.  You are correct in that I have

7   ruled on this issue in four other cases.  I did note what

8   Ms. Redmond said in the prior cases, but then she and I had a

9   colloquy in Mr. Rodriguez's case.

10          And to reset the facts here, Mr. Crowell, Mr. Crowell's

11   business was where this marijuana, a truckload of marijuana, was

12   being unloaded.  Mr. Carrillo was with Mr. Crowell when he

13   unloaded the marijuana.  Mr. Carrillo was, I believe, standing

14   by the scales when the officers came in.  Mr. Crowell had in his

15   pocket a pistol at the time the marijuana was being unloaded.

16          Mr. Crowell's statement was that he had the pistol to,

17   quote, protect his business.  His business was an auto repair

18   shop or body shop of some sort, but he also admitted that his

19   business had been used on four or five prior occasions for the

20   purpose of unloading illegal drugs.  Therefore, he had a legal

21   business and an illegal business in this -- at this location.

22   He was present.  He had a gun in his pocket.

23          Your client was present.  They unloaded the drugs

24   together.  They were seen by the officers.  And the pistol was

25   used in furtherance of the conspiracy, as I have ruled

1    previously, because he was, quote, protecting his business.  And

2    I take that to mean both his legal and his illegal business.

3           That being the case, under the -- under *United States*

4    *versus Pham*, P-H-A-M, I find that the possessor of the firearm

5    was a coconspirator.  I find that the possession was in

6    furtherance of the conspiracy by his own testimony that he was

7    protecting his business.  Three, that the defendant -- this

8    defendant was a member of the conspiracy, which is really not

9    contested, and four, that the coconspirator's possession was

10   reasonably foreseeable to the defendant.  Actual knowledge is

11   not required, just reasonable foreseeability.

12          As I understand -- ma'am?

13          THE INTERPRETER:  Yes, Your Honor.  I didn't quite get

14   the last statement.  I think it's important.

15          THE COURT:  Yes.  I find fourthly that the

16   coconspirator's possession was reasonably foreseeable to the

17   defendant.  The law does not require that he have actual

18   knowledge that a weapon is present, only that it be reasonably

19   foreseeable.  In the colloquy with Ms. Redmond in the prior case

20   of Francisco Rodriguez, Ms. Redmond agreed and said that "I

21   would never -- and I could not say that it was clearly

22   improbable, and I would not make such an argument.  I think in

23   fact Mr. Crowell had it to protect himself while he was engaged

24   in this activity."

25          I take that now to be the government's position; is

1    that correct?

2         MS. REDMOND:  Yes, Your Honor.

3         THE COURT:  Now, the burden under *U.S. v. Hall* shifts

4    to the defendant to establish that it was clearly improbable.

5    The Eleventh Circuit has held that a coconspirator's firearms

6    that he kept in his own home were in furtherance of the

7    conspiracy because the defendant visited the home and the home

8    was used in furtherance of the conspiracy.  That's *United States*

9    *versus Plummer*, 2009, an Eleventh Circuit case.

10        Here, similar to the facts in *Plummer*, the defendant

11   visited the warehouse.  The warehouse was used in the

12   furtherance of the conspiracy.  And moreover, this defendant and

13   Mr. Crowell were jointly unloading literally a truckload of

14   marijuana that was baled, and the pistol was present there at

15   the warehouse during the acts in furtherance of the conspiracy.

16   So I find this case to be very similar to *United States versus*

17   *Plummer*, and the objection is overruled.

18        MS. JAMES:  Thank you, Your Honor.  Note my objection

19   for the record, please.

20        THE COURT:  Noted.  Any other objections?

21        MS. JAMES:  That would be the only one.

22        THE COURT:  All right.  Any objections from the

23   government?

24        MS. REDMOND:  Judge, the government did, in terms of

25   the presentence report, have objections.  Primarily, Judge, we

1  objected to the note or the writing by Probation that the

2  defendant may be entitled or is entitled to safety valve

3  consideration.  And it is our position that this defendant is

4  not safety valve eligible, as he has not met all of the

5  requirements for safety valve consideration in that there is a

6  requirement that the defendant provide to the government honest

7  and truthful information regarding his conduct and what he knows

8  about the drug trafficking activity.

9         The defendant, Your Honor, gave two statements --

10  excuse me -- two statements to the government, the first the

11  night of the arrest.  And if I could proffer, Judge, what he

12  basically said was that he had a lot to say, but he needed the

13  government to provide he and his family with safeguards, which

14  we were not prepared to do or able to do at that point.  So no

15  other statement and certainly no statement involving his own

16  conduct or the -- the conspiracy itself was given at that time.

17         The second proffer was given, Judge, on February 26th

18  of this year.  And Mr. Goggans at that time was representing the

19  defendant.  And Mr. Carrillo's statement at that time, pursuant

20  to proffer, was that this was the first time he had been

21  involved in activity of the kind and that he had been paid to

22  unload the marijuana, could not identify who was to pay him.  In

23  short, Judge, while he did make statements, he did not fully

24  provide to the government information involving his own

25  behavior, let alone that of the -- what he fully knew about the

1    drug trafficking conspiracy.

2         So it's our position that while he might be entitled

3    and he is entitled for acceptance of responsibility, he has not

4    provided to the government sufficient information to allow the

5    safety valve to be given, because he's not met that fifth and

6    final requirement.

7         THE COURT:  Is that a fact, Ms. James?  Can you dispute

8    that?

9         MS. JAMES:  Dispute what she's saying?

10        THE COURT:  Right.  That he's not entitled to the

11   two-level reduction for safety valve.

12        MS. JAMES:  Well, Judge, I have problems with it for a

13   couple of reasons.  Number one, Ms. Redmond did not file -- to

14   my knowledge, did not file objections to the presentence report.

15        THE COURT:  I've noted that.  And it's in the plea

16   agreement that you will file it if -- you will file a 5K motion

17   if he cooperates, and you have the sole discretion to say he

18   didn't cooperate.

19        You said, when I asked you that the government had

20   complied, Ms. James, you said that the government had complied

21   with the plea agreement.

22        MS. JAMES:  Yes, sir.  And I'm not saying that -- I

23   mean I think it's two different things.

24        THE COURT:  All right.

25        MS. JAMES:  I think that what she's adding, she's

1   raising the bar on the fifth element of 5C1.2.  One, I think

2   that she should fail on the objection because Probation hadn't

3   had an opportunity, I don't think, to deal with it.  It wasn't

4   in the presentence report.

5        But more importantly, that paragraph five says:  No

6   later than the time of the sentencing hearing, the defendant has

7   truthfully provided to the government all information and

8   evidence the defendant has concerning the offense or offenses

9   that were part of the same course of conduct or of a common

10  scheme or plan.  And she said, because I wrote it down, full

11  knowledge of the drug trafficking.  She's raising the bar.  It's

12  about what he did.  And the only thing that she can find issue

13  with, as I'm understanding it, is -- if he were going to provide

14  full knowledge of the drug trafficking organization, we would be

15  here saying that she had not complied with the plea agreement,

16  because he would probably be entitled to a 5K1.  And they are

17  two different things.  I mean this is about this defendant.

18            THE INTERPRETER:  Excuse me.

19            MS. JAMES:  I'll move.

20            THE INTERPRETER:  If she will have complied -- just the

21  last part.

22            MS. JAMES:  Then we would have argued that she didn't

23  comply with the plea agreement if he had given full and complete

24  information about others.  There is no requirement under 5C1

25  that he say who was the source of the drugs.  It's -- it's his

1    acknowledgment of what he did.  And I think that he -- her

2    dispute is he said he did it once.  And she says now that other

3    defendants who have cooperated subsequent to his statements have

4    said that he was involved more than on one occasion.

5         THE COURT:  Paragraph 20 says that -- and the officer

6    is here; the agent is here -- that he stated that he would like

7    to cooperate but first needed to guarantee that his family would

8    be protected.  He stated, quote, I know a lot, but declined to

9    provide further information because he was told no guarantee

10   could be made at that time.  So he made an affirmative

11   representation to Agent Halasz that he knew a lot, but he

12   declined to provide it.  And as far as I know, he hasn't

13   provided it since.

14        MS. JAMES:  Right.  But again, Judge, in all due

15   respect, my point is that in every -- every defendant would be

16   vulnerable to not receiving the safety valve if they didn't tell

17   on other people.  And I don't think there's a requirement here

18   under 5C1 that you have to tell on other people.  It's his

19   involvement.  His involvement is I -- we loaded some marijuana

20   in Texas.  We brought it to Alabama.  We unloaded it in Phenix

21   City.  I was there.  My job was, you know, to weigh and count

22   the drugs and that's what I did and I'm guilty of it, not I got

23   the drugs from, you know, Mr. Castillo in Houston and this is

24   what Castillo is doing and on and on and on.  I mean, because if

25   we had taken that step and he had not been concerned, yes, he

1   would have probably provided substantial assistance to the

2   extent that he would have received a 5K1 motion from the

3   government.

4        And I just don't think -- that's why I say that she's

5   raising the bar saying full knowledge of the drug trafficking

6   operation.  I just don't think that that's a requirement.  I

7   will concede the one point that she's making.  I concede that

8   she has another point -- I'm not saying it's valid -- where she

9   says he wasn't truthful because he said one time and there were

10  more.  But she's relying on information provided by cooperating

11  individuals who were cooperating in order to gain leniency in

12  their own sentences.

13        MS. REDMOND:  Judge, if I might.

14        THE COURT:  You may.  Are you raising the bar?

15        MS. REDMOND:  I am not.  5C1.2 paren five -- excuse

16  me.  It's 5C1.2(a)(5).  Not later than the time of the

17  sentencing hearing, the defendant has truthfully provided to the

18  government all information and evidence the defendant has

19  concerning the offense or offenses that were part of the same

20  course of conduct or of a common scheme or plan, but the fact

21  that the defendant has no relevant or useful other information

22  to provide or that the government is already aware of the

23  information shall not preclude a determination by the Court that

24  the defendant has complied with this requirement.

25        Truthfully and all of the information.  Not about just

1   his own activity, but about the entire conspiracy.  And to the

2   point about 5K, two separate and distinct issues.  You can be a

3   peon and not have much information and still get safety valve

4   and not get 5K or you can be, as in this case, a person who is

5   integrally involved in the drug trafficking operation and have

6   full and complete information which you choose not to share.

7            In this case, the defendant provided the information

8   that this was his first time involved in any activity of this

9   kind, that he was to be paid to assist in unloading marijuana

10  but he couldn't identify who was to pay him.  He said that he

11  was weighing and keeping a written ledger of the weight of each

12  marijuana bale, regarding the arrest offense, but he said he

13  couldn't identify the person to whom he was to provide the

14  ledger when finished.

15           We shared with him that we had already established

16  that, telling us that he wasn't telling us the truth.  This had

17  been an ongoing investigation.  And he maintained that he knew

18  nothing else.  He just showed up that day, and his job was to

19  keep the ledger and unload.  We knew that to be false at the

20  time we sat down with him; and codefendants' statements and

21  testimony since then fully, then, established that there are

22  more people involved in this drug trafficking offense, that

23  Mr. Carrillo had done this on numerous occasions, that it was

24  his job to provide the -- to keep an accounting and to provide

25  that accounting to an unnamed, at this point, coconspirator.

1              And the government is prepared to put on not only the

2    agent but the codefendants to establish that testimony, but that

3    would be the proffer of the government in relation to safety

4    valve.  He is not -- has not been truthful, nor has he been

5    forthcoming fully with the details of this offense as he

6    understands and knows them.

7              THE COURT:  Who was Raul Jimenez?

8              MS. REDMOND:  Raul Jimenez is the Texas boss of this

9    conspiracy.  And it is to that person that Mr. Carrillo owed the

10   accounting.

11             THE COURT:  And isn't it a fact, according to paragraph

12   18 of the PSR, that Mr. Jimenez and Mr. Carrillo drove to

13   Alabama in a black Hummer?

14             MS. REDMOND:  Yes, sir.

15             THE COURT:  From Houston, Texas?

16             MS. REDMOND:  Yes, sir.

17             THE COURT:  Fourteen hours.

18             MS. REDMOND:  Yes, sir.  I would also share with the

19   Court that the testimony from the agent would be -- and again, I

20   share with the Court that the government had been conducting an

21   investigation regarding this conspiracy for some time.  Back on

22   July 19th -- excuse me -- July 11th of 2009, Mr. Carrillo --

23   excuse me -- received -- I'm sorry.  Mr. Carrillo delivered in

24   Opelika, Alabama, having driven up from Houston, 4,555 -- I'm

25   sorry -- yes, some $455,000 in payment for drug trafficking

1    activity.  So we already knew at the time of this offense that

2    there had been additional offenses occurring here in the Middle

3    District --

4          THE COURT:  You're saying Carrillo delivered that

5    money?

6          MS. REDMOND:  Yes, sir.

7          THE COURT:  Why is that not in the presentence report?

8          MS. REDMOND:  It's an ongoing investigation I believe I

9    shared.

10          THE COURT:  All right.  Okay.  Ms. James, I don't have

11    any objections from you of these other statements that were made

12    to the agent that Mr. Jimenez was the owner of the marijuana and

13    that he drove the black Hummer; that Mr. Carrillo rode all the

14    way from Houston, Texas, to Montgomery, Alabama; that this was

15    the fifth or sixth time that he had done this.  You know, I

16    don't have any dispute of that.

17          MS. JAMES:  Judge, we --

18          THE COURT:  It seems to me he hasn't been forthcoming.

19          MS. JAMES:  Judge, we did not file any objections to

20    the facts set forth in the presentence report.  And those

21    comments that the Court is making are contained within the

22    statement of facts.

23          I -- I still think, Judge, there are a couple of things

24    the Court could consider.  If you accept what Agent Halasz said

25    that Mr. Carrillo said initially, was that he was concerned

1    about his safety and his family's safety.  He has family in

2    Houston.  And certainly he -- he's in custody.  His mother is --

3    I think lives alone out there.  I think he lived with his mother

4    when this -- when he was actually arrested.  And I think they

5    were legitimate safety concerns.  When he spoke to law

6    enforcement about his own conduct, again, I think he was

7    forthright as to what he did, not what others did.

8            THE COURT:  All right.  I hear your argument.

9    Nevertheless, whatever his motivation is, it's within his power

10   and his power alone to determine whether he gets -- or to

11   cooperate to the extent that he would get safety valve.

12           And Windy, you did have an e-mail from the

13   government -- you had notice from the government early on that

14   they would take -- that the government was going to take the

15   position in this case that this defendant is not entitled to

16   that two-level reduction, did you not?

17           PROBATION OFFICER JOHNSON:  Yes, sir.  On October 29th,

18   I received an e-mail from Ms. Redmond in reference to the safety

19   valve.

20           THE INTERPRETER:  I'm not able to hear.

21           PROBATION OFFICER JOHNSON:  I'm sorry.  On October

22   29th, I received an e-mail from Ms. Redmond in regard to the

23   safety valve issue.  At the time of writing the presentence

24   report, I did not have this information and I -- I gave the

25   defendant safety valve.  At the present time, I have no

1   information to contradict what the government's putting on in

2   testimony today.

3         THE COURT:  Well, I wanted to get on the record that

4   you informed the Court that the government had an objection, did

5   you not?

6         PROBATION OFFICER JOHNSON:  Yes, sir, I did.

7   Yesterday.

8         THE COURT:  Prior.  Okay.

9         MS. REDMOND:  And Judge, if I could, I thought -- and

10   it's partially my -- not partially.  It is my problem or my

11   fault, I suppose.  At the last sentencing hearing, I indicated,

12   I thought, to Probation that Mr. Carrillo had not, to our way of

13   thinking, provided sufficient information to qualify him for

14   safety valve.

15         And I just want to say the one thing in my defense is

16   that part of the problem that we have is that per that guideline

17   and per the instructions of the guideline, the defendant

18   actually has up to and including right before sentencing.  And

19   so -- and I know the Court may or may not be aware, but that was

20   part of what we were dealing with in the last set of the

21   codefendants, that they were coming along and it was coming back

22   and forth to the table.

23         In this particular case, Mr. Carrillo, despite

24   conversations with both Mr. Goggans and Ms. James, chose --

25   Mr. Carrillo chose not to come back to the table and has not

1    come back to the table.  So at this point, it is cemented in the

2    government's -- to the government's thinking that he is not

3    safety valve eligible.

4            THE COURT:  All right.  I'm going to, in my discretion,

5    accept the government's objection.  And based on what I know

6    right now, I sustain the objection and find that this defendant,

7    under the circumstances presently before the Court, is not

8    entitled to a two-level reduction, what's commonly referred to

9    as safety valve in 5C1.2.

10           And I believe that deals with all the objections in

11   this case.  Anything else from the government?

12           MS. REDMOND:  Judge, there was one additional.  And for

13   the Court's information, the government took the position

14   that -- at the last sentencing hearing that Mr. Holland and

15   Mr. Carrillo played distinct roles in this conspiracy.  And we

16   put it before the Court in terms of factual information that

17   unlike the -- Mr. Rodriguez-Palma and Mr. Rodriguez, Mr. Holland

18   and Mr. Carrillo played a managerial role.

19           THE INTERPRETER:  Excuse me.  Can you repeat the name?

20   You said Mr. So-and-So and Mr. Carrillo.  I'm not able to

21   discern.

22           MS. REDMOND:  Yes, ma'am.

23           THE INTERPRETER:  Mr. Goggans?  Or can you spell it for

24   me, please --

25           MS. REDMOND:  Yes, ma'am.

1          THE INTERPRETER:  -- the name you are mentioning

2    together with Mr. Carrillo?

3          MS. REDMOND:  Holland, H-O-L-L-A --

4          THE INTERPRETER:  Okay.

5          MS. REDMOND:  Ma'am?

6          THE INTERPRETER:  Yes.

7          THE COURT:  She said she understands.

8          MS. REDMOND:  Oh, okay.

9          THE INTERPRETER:  Thank you.  Thank you.

10          MS. REDMOND:  Mr. Holland and Mr. Carrillo had

11    managerial roles in that they were accountants as well as folks

12    who had loading and unloading responsibilities.  This -- in this

13    particular conspiracy, Mr. Carrillo had accounting

14    responsibilities to the Texas side of the conspiracy while

15    Mr. Holland had reporting and accounting responsibilities to the

16    Middle District side of the conspiracy.  And we took the

17    position with Mr. Holland and we take it with Mr. Carrillo that

18    they were not minor or minimal participants.  We actually

19    believe that there should be considered an upward -- or an

20    upward enhancement of perhaps three levels because of the

21    difference in their role in this conspiracy.

22          THE COURT:  All right.  I don't have an objection to

23    that effect, and I didn't have any notice of that one.

24          MS. REDMOND:  I believe I shared that at the same

25    time -- with Probation that I shared my objection.  I understand

 1   what the Court is saying.

 2          THE COURT:  I don't have -- but this is the first I've

 3   heard of it.

 4          MS. JAMES:  Judge, if I may.

 5          THE COURT:  I didn't have an objection, so I haven't

 6   had an opportunity to consider or deliberate on that.

 7          Yes, ma'am.

 8          MS. JAMES:  Right.

 9          THE COURT:  Ms. James?

10          MS. JAMES:  And I had no notice of it because I wasn't

11   here when the others were sentenced.  It's not in the

12   presentence report.  I mean obviously, if I had been on

13   notice -- I learned it for the first time today that the

14   government was considering moving for that.  And I've not had an

15   opportunity to file an objection, to research it, or provide the

16   Court any argument in relation to that request of the

17   government.

18          MS. REDMOND:  And Judge, we actually are not -- and I

19   don't know if I might have misspoken.  We actually are not

20   necessarily making that request.  My point is that they were not

21   minor or minimal participants.  And so the two levels for -- I'm

22   sorry.  I'm sorry, Judge.

23          THE COURT:  You're saying that's in mitigation of

24   giving him a two-level reduction.

25          MS. REDMOND:  Yes, sir.

1          THE COURT:  That actually, he could have been --

2          MS. REDMOND:  Yes, sir.

3          THE COURT:  If you had insisted, he might have received

4   two or three levels for managerial role in the offense.  That's

5   your point.

6          MS. REDMOND:  Yes, sir.  And in keeping with 3553(a)

7   factors, I will state for the record and remind the Court, the

8   Court did not upwardly adjust Mr. Holland.  It did not, I don't

9   believe, give Mr. Holland the minor or an adjustment down for

10  being a minor role -- having -- playing a minor role in the

11  offense.  And I simply wanted to bring that to the Court's

12  attention, that I do not believe that any reduction for role in

13  the offense should be given in this case.

14         THE COURT:  All right.  For the record, Mr. Holland

15  received a two-level reduction for safety valve and a six-level

16  5K reduction, which is pretty -- one of the larger ones I've

17  ever granted.

18         MS. REDMOND:  It is, Your Honor.

19         THE COURT:  Mr. Holland and Mr. Carrillo -- Carrillo,

20  I'm going to say, are, you say, equal participants in this

21  conspiracy.  Or you consider them to be equal participants.

22         MS. REDMOND:  Yes, sir.

23         THE COURT:  And the implication being that Mr. Carrillo

24  should get basically the same treatment Mr. Holland got except

25  that there won't be any safety valve or 5K reduction.

```
 1              MS. REDMOND:  Yes, sir.
 2              THE COURT:  All right.  Well, to the extent you made an
 3    objection, it's overruled, because I didn't have it.  So I think
 4    that concludes the objections.  We're not quite to the 5K point
 5    yet.  I need to give you-all my calculations at this time.
 6              MS. JAMES:  Do you want the defendant to stand, Judge?
 7              THE COURT:  No, not for the calculations.
 8              In compliance with Justice Breyer's majority opinion in
 9    Booker, this Court, while not bound to apply the guidelines, has
10    consulted them and has taken them into account on the issue of
11    the appropriate range of sentence to be imposed in this case.
12    Having ruled upon the objections to the presentence report, the
13    Court adopts the factual statements contained in the presentence
14    report with specific findings that the offense level is 31, the
15    criminal history category is I, the guideline range is from 108
16    to 135 months, the supervised release period is from three to
17    five years -- and help me, Windy, on the fine range.  Is it
18    still 15,000 to four million?
19              PROBATION OFFICER JOHNSON:  Yes, sir.
20              THE COURT:  All right.  And the fine range is from
21    15,000 to four million.  Does the government dispute these
22    figures?
23              MS. REDMOND:  No, Your Honor.
24              THE COURT:  In view of my ruling on the objections,
25    does the defendant dispute these figures?
```

 1          MS. JAMES:  No, Your Honor.

 2          THE COURT:  Now, Ms. James, do either you or your

 3    client have anything to say in mitigation or otherwise before

 4    the Court pronounces sentence in this case?  And I will point

 5    out that you have filed a sentencing memorandum, and I have read

 6    it, studied it, including the character references in it.

 7          MS. JAMES:  Thank you, Judge.  I would ask the Court to

 8    consider his family support and his reputation in his community

 9    for being a hard worker and a good guy who apparently helps

10    other people.  I think that that is a factor that the Court can

11    consider in this case.

12          I would also point out that while Ms. Redmond -- and I

13    wasn't going to ask the Court for a minor or minimal role

14    reduction, but I know that she has made the argument about the

15    relative roles in the case and used that for a reason that the

16    Court should not grant a reduction if I had asked for it.  I

17    would point out and I think it's obvious to the Court -- I mean

18    every drug conspiracy has someone that weighs the dope and

19    counts money and does those things, and I don't think that those

20    are necessarily more important roles than some of the others.  I

21    think the Court recognizes and did so in the other case with I

22    believe it's Mr. Palma, who received a role reduction, that he

23    was less involved, I think, than perhaps Mr. Holland and

24    Mr. Carrillo.

25          THE COURT:  He had a much -- about one-third -- he had

1    one-third of the attribution of the pounds of marijuana.

2         MS. JAMES:  Okay.  And so I don't think that even if

3    Mr. Carrillo was counting money or doing -- she's referred to

4    him as doing accounting.  I mean it doesn't take specialized

5    skill to count the money or to weigh the drugs.  And I would

6    just point that out to the Court.

7         I would -- I'd ask the Court to consider a variance

8    from what I had believed would be the guidelines of 87 to 108

9    months and ask the Court to vary down to a 60-month sentence,

10   which is the mandatory minimum in this case, given that the

11   defendant did not receive the benefit of a substantial

12   assistance motion by the government because he chose not to

13   cooperate because of concerns for his family.  He is a young man

14   and even five years in prison is a substantial amount of time.

15   And I certainly hate to try to minimize any drug offense, but --

16   I mean it's still against the law, and I understand that.  But I

17   would just remind the Court that this was a marijuana case,

18   albeit a relatively large marijuana case.

19        THE COURT:  Two and a half tons.

20        MS. JAMES:  Yes, sir.  And I --

21        THE INTERPRETER:  Your Honor, did you say four and a

22   half tons?

23        THE COURT:  I said two and a half tons.

24        THE INTERPRETER:  Excuse me.  Thank you.

25        THE COURT:  That's still a lot.

1            MS. JAMES:   And Judge, I would -- I would point out to

2     the Court that while I have asked the Court to vary to a

3     60-month sentence, Probation, even in the face of Ms. Redmond's

4     objection to the safety valve -- and I believe they've indicated

5     they knew of her objection to the safety valve on October the

6     29th -- they still, in the recommendation for sentence in this

7     case, have recommended that an appropriate sentence would be 87

8     months.

9            And while I'm still urging the Court to vary

10     downward -- and in particular, I recognize that the government

11     says Mr. Holland and Mr. Carrillo had similar roles, they were

12     just on different sides of this equation.   And he did receive

13     the safety valve and he did receive six levels downward for

14     cooperation, as the Court just noted.   He received a sentence of

15     46 months.   And I think that obviously the Court can look at

16     disparity.   And I know the distinction between the two is that

17     Mr. Holland cooperated; Mr. Carrillo did not.   But I think that

18     the lesser sentence that I've requested or at the very -- at the

19     most, the sentence recommended by Probation, would avoid such a

20     vast disparity between the two.

21            You know, I know how this works.   And I know that

22     people get credit when they cooperate, and I understand all of

23     that.   But given the fact that the government has stepped out

24     and said, you know, their roles were the same, I'm asking the

25     Court to consider that in fashioning a sentence.   And I'm again

 1    urging the Court to recommend -- I mean to impose a 60-month

 2    sentence.  But if the Court disagrees, I would urge the Court

 3    not to impose a sentence any greater than that recommended by

 4    the probation officer, who indicated, I believe, in their

 5    recommendation, that, you know, considering the defendant's

 6    criminal history -- limited criminal history, she says, and the

 7    factors in 3553(a), all the relevant conduct and the

 8    characteristics of the defendant, the probation officer

 9    recommends a sentence of 87 months, which is at the low end of

10    the guideline range.

11            I'm not sure if Mr. Carrillo --

12            THE COURT:  That was the former guideline range.  The

13    current guideline range is 108 to 135.

14            MS. JAMES:  I understand that.  But I'm saying -- and

15    that's why I pointed out the time.  I mean I don't know without

16    asking the probation officer when the recommendation was done,

17    but --

18            THE COURT:  They gave -- that reflects a two-level

19    reduction.  That recommendation reflects a two-level reduction

20    for the 5K -- I mean for the --

21            MS. JAMES:  Safety valve.

22            THE COURT:  -- safety valve, which has been lost to

23    this defendant at this time.

24            MS. JAMES:  Well, they're still urging a low end of the

25    guideline sentence.  And if the Court -- I would ask the Court

1    to vary from the guidelines for the reasons that I've stated.

2            I'm not sure if Mr. Carrillo would like to be heard or

3    not.

4            THE COURT:  Yes.  Mr. Carrillo, if you have anything to

5    say to the Court, now is the time to say it.

6            THE DEFENDANT:  Yes.

7        (The defendant speaks in Spanish)

8            THE COURT:  Ms. Riggle, if you're translating, it's

9    not --

10           THE INTERPRETER:  No.  I'm just not able to hear what

11   he's saying, Your Honor, and I'm asking him to repeat.

12           THE COURT:  Okay.  Go ahead.  And speak more -- put the

13   mike closer to -- there you go.  Now, speak more loudly, please.

14           MS. JAMES:  Wait a minute, Judge.  We've got a

15   problem.  These things aren't big enough.

16           THE DEFENDANT:  (Through the interpreter)  I want to

17   tell Your Honor that with all due respect, the role that each of

18   us had, it was the same.

19           THE COURT:  Okay.  Anything else?

20           THE DEFENDANT:  That's all.  And I just also want to

21   apologize to Your Honor, all of those present here, and the

22   country for the crime I committed.

23           THE COURT:  Okay.  Thank you.  All right.  You-all may

24   be seated.

25           Does the government have any response?

1          MS. REDMOND:  Judge, the government -- the government's

2    response would be that the government believes it's telling that

3    even with the safety valve being taken into consideration by

4    Probation, Probation still chose a -- to recommend a sentence

5    within the guideline that it believed the Court would find.  We

6    believe, Judge, that a sentence within the guideline range of

7    108 to 135 months would be an appropriate and reasonable

8    sentence pursuant to the 3553(a) factors.  We note that the

9    probation department has not found any reason or justification

10   for downward departures or downward variances in this case.

11         THE COURT:  Windy, with respect to your recommendation,

12   without the safety valve two-level reduction, what would your

13   recommendation be, for the record?

14         PROBATION OFFICER JOHNSON:  At the low end of the

15   guideline range, 108 months.

16         THE COURT:  Thank you.

17         All right.  Ms. James, if you and the defendant would

18   stand.  The sentence will now be stated, but you will have a

19   final chance to make legal objections before the sentence is

20   imposed.

21         I pay particular attention to disparities in

22   sentencing, both among, as far as I can tell, all defendants in

23   the country that I am able to keep up with statistically and

24   with the guideline recommendations and with defendants within a

25   particular conspiracy.  Here we have a young man, 25, 26 years

old, with a criminal history of I who has a comparable role to
Mr. Jerry Holland, whom I've already sentenced, but who
cooperated substantially and was able to get eight levels of
reduction overall because of his cooperation.  Nevertheless,
both of these men were charged with a conservative amount of two
and a half tons -- over two and a half tons of marijuana coming
in to Mr. Crowell's business on four or five occasions that we
know of.

       I also have verifiable information that -- or
undisputed information, actually, that Mr. Raul Jimenez, was
identified as the driver of the black Hummer SUV and that
Mr. Jimenez, according to one or more coconspirators, was the
owner of the marijuana on this particular occasion and on prior
occasions and that Mr. Jose Carrillo in this case drove from
Houston, Texas, to the Opelika area with Mr. Jimenez.  The Court
takes notice of the fact that that's at least a 12-hour drive if
not a 14-hour drive where they would be in the same vehicle
together.

       I also note pursuant to paragraph 12 of the PSR that
Jose Carrillo was in the garage for approximately an hour
unloading several large black bales.  As it was unloaded,
Special Agent Gainer observed the black Infiniti in which
Mr. Carrillo was transported to Montgomery -- I mean to Opelika
from Houston, Texas.  It continued to be occupied by Raul
Jimenez in the nearby Waffle King parking lot.  I assume that's

1   the reason he was not arrested when the officers came in,

2   because he was not actually -- he was next door, but outside the

3   fence of Mr. Crowell's auto business.

4         I note that Mr. Crowell had a .38-caliber Derringer in

5   his pocket when he was working with this particular defendant to

6   unload.  I note that officers located Mr. Carrillo holding bales

7   of marijuana standing next to scales and written ledgers which

8   documented the weight of the marijuana.  According to the

9   ledgers, 84 of the 96 bales of marijuana had been weighed, and

10  the average weight of each bale was 12 pounds.

11        I also find without objection and undisputed that

12  Mr. Carrillo stated that he knew a lot but he declined to

13  provide further information without assurances to his family and

14  that the -- that Mr. Carrillo, contrary to the statement he

15  offered at some point, that he actually participated in each of

16  the prior occasions.  And that is why he is attributed to the

17  undisputed amount -- his attribution of the undisputed amount of

18  5,184 pounds of marijuana in this case.  And I find that that is

19  a conservative estimate of the amount of marijuana involved.

20        Having considered the sentencing guidelines and

21  evaluated the reasonableness of a sentence through the lens of

22  Section 3553 and in consideration of the facts that I've just

23  recited, it is the judgment of the Court, Mr. Carrillo, that you

24  are hereby committed to the custody of the Federal Bureau of

25  Prisons to be imprisoned for a total term of 108 months.  This

1   sentence consists of terms of 108 months on each count to be

2   served concurrently.

3        Having considered the guideline computations and having

4   taken them under advisement, as I said, the Court finds that the

5   sentence imposed is sufficient but not greater than necessary to

6   comply with the statutory purposes of sentencing.  Furthermore,

7   the sentence is reasonable when considering the 3553(a)

8   sentencing factors, such as the nature and circumstances of the

9   offense and the history and characteristics of this defendant;

10  to reflect the seriousness of the offense, which the Court finds

11  to be very serious involving especially the number of occasions

12  and the amount of drugs attributed to this defendant; to promote

13  respect for the law and to provide just punishment for the

14  offense; to afford adequate deterrence to criminal conduct; to

15  protect the public from further crimes of this defendant; and

16  finally, to avoid unwarranted sentence disparities among

17  defendants.

18       Mr. Carrillo, the Court recommends that you be

19  designated to a facility where intensive drug -- residential

20  drug treatment is available.  The Court also recommends that you

21  be designated to a facility where vocational and educational

22  training are available.

23       Upon release from imprisonment, you shall be placed on

24  supervised release for a term of five years on count one and

25  five years on count two, such terms to run concurrently.  Within

1   72 hours of release from custody, you shall report to the

2   probation office in the district to which you are released.

3   While on supervised release, you shall comply with the mandatory

4   and standard conditions of supervised release on file with this

5   Court.

6           I also order the following special conditions.  You

7   shall participate in a program of drug testing administered by

8   the United States Probation Office for substance abuse.  You

9   shall contribute to the cost of any treatment based on ability

10  to pay and availability of third-party payments.  You shall

11  submit to a search of your person, residence, office, or vehicle

12  pursuant to the search policy of this Court.

13          In light of your illegal status, upon completion of the

14  term of imprisonment, you shall be remanded to the custody of

15  the Bureau of Immigration and Customs Enforcement for

16  deportation proceedings in accordance with the Immigration and

17  Nationality Act.  If deported, the term of supervision shall be

18  nonreporting while you live outside the United States.  You

19  shall not illegally reenter the United States.  And if you

20  should reenter the United States during the term of supervised

21  release, you shall report to the nearest United States Probation

22  Office within 72 hours of arrival.

23          Based on your inability to pay, the Court waives the

24  imposition of a fine, but you are assessed a special assessment

25  fee of $200, payable to the United States District Court Clerk,

1   which is due immediately.  The Court finds no identifiable

2   victim who incurred a financial loss as a result of this

3   offense; therefore, there is no restitution.

4        Now, are there any objections to the sentence or to the

5   manner in which the Court pronounced it?  First from the

6   government.

7        MS. REDMOND:  No, Your Honor.

8        THE COURT:  From the defendant?

9        MS. JAMES:  None other than those that have been

10   previously stated.

11        THE COURT:  All right.

12        MS. JAMES:  I do have a request.

13        THE COURT:  All right.  The sentence is ordered imposed

14   as stated.

15        Pursuant to the plea agreement, you've waived,

16   Mr. Carrillo, most of your appeal rights, but you've retained a

17   right to appeal within 14 days under certain very limited

18   circumstances set out in your plea agreement.  If you cannot

19   afford the cost of an appeal, you have the right to apply for

20   leave to appeal *in forma pauperis*.  In other words, you may

21   apply to proceed with your appeal at no cost to you.

22        Is there anything further from the government?

23        MS. REDMOND:  Judge, I don't believe there were any

24   additional counts involving Mr. Carrillo; so with that being

25   said, the government has nothing further.

1           THE COURT:   All right.   Anything further from the

2    defendant?

3           MS. JAMES:   Judge, I know that any recommendation by

4    the Court is not binding on the Bureau of Prisons, but I do know

5    that it is something that they consider.   The federal -- there's

6    a federal prison in Beaumont, Texas, which is about 45 minutes

7    from Houston, and I think that he would qualify for that

8    facility.   And it would certainly alleviate a family hardship

9    with his family being able to visit him.   So we're asking that

10   the Court, on the judgment and commitment order, recommend that

11   he be placed at the Beaumont facility.

12           THE COURT:   I will recommend a facility close to his --

13   my standard language, close to his residence in Houston, Texas.

14           MS. JAMES:   Thank you, Your Honor.

15           THE COURT:   Mr. Carrillo, it gives me no pleasure to

16   have to sentence you.   You're a young man, and your associations

17   have created a bad situation for you and for your family.   I

18   urge you to consider your options, comply with all laws of this

19   country, and to heed the advice of your lawyer in these

20   matters.   I wish the best for you.   You're remanded to the

21   custody of the United States Marshal.

22           We'll be adjourned for ten minutes, at which time we'll

23   undertake the Goldsborough hearing.

24           And to the interpreter, Ms. Riggle, thank you for being

25   with us today.   You are excused now.

1          THE INTERPRETER:  Thank you, Your Honor.

2      (Proceedings concluded at 12:54 p.m.)

3                  * * * * * * * * * *

4              COURT REPORTER'S CERTIFICATE

5          I certify that the foregoing is a correct transcript

6   from the record of proceedings in the above-entitled matter.

7          This 13th day of January, 2011.

8

9                              /s/ Risa L. Entrekin
                               Registered Diplomate Reporter
10                             Certified Realtime Reporter
                               Official Court Reporter
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25